**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| MONTELIS PETERS | | |
| | * | |
| | | |
| **Plaintiff,** | * | |
| v. | | Case No.: GJH-14-00955 |
| | * | |
| CITY OF MOUNT RAINIER, ET AL., | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

This is a civil rights action brought by Plaintiff Montelis Peters ("Peters") against the City of Mount Rainier (the "City") and Corporal Rob Caplan ("Officer Caplan") (collectively, the "Defendants") for purported violations of 42 U.S.C. § 1983 and Articles 24 and 26 of the Maryland Declaration of Rights arising from Peters' arrest on January 7, 2012. This Memorandum and Order addresses Defendants' Joint Motion to Dismiss, ECF No. 14. The Court held a hearing on Defendants' motion on August 13, 2014 during which the Court informed the parties of its intention to convert Defendants' motion into a motion for summary judgment as to counts three, four, and five. For the reasons stated below, Defendants' Joint Motion to Dismiss and/or for Summary Judgment is **GRANTED**.

## I. BACKGROUND

On January 7, 2012, Peters was walking from his house with a friend looking for a store where he could cash a check. ECF No. 12-1 at ¶ 4. Around 9:40 pm, Peters successfully cashed

his check at a local liquor store in Prince George's County. *Id.* at ¶ 6. After cashing his check, Peters and his friend began walking towards the West Hyattsville Metro Station. *Id.* at ¶ 7. As they were walking, Peters and his friend were stopped at gunpoint by two members of the Mount Rainier Police Department, including Officer Caplan. *Id.* at ¶ 8. Peters and his friend were told that they fit the description of robbery suspects and were taken to the Hyattsville Police Department for processing. *Id.*

Around the time Peters and his friend were taken into custody, Officer Caplan prepared, signed, and presented to a Commissioner of the District Court of Maryland for Prince George's County a Statement of Probable Cause. *Id.* at ¶ 9. The Statement of Probable Cause resulted in Peters being charged with attempted robbery with a deadly weapon and assault. *Id.* at ¶ 10. The information reported in the Statement of Probable Cause was later used to procure a nine count indictment charging Peters with various crimes. *Id.* at ¶ 11. Peters contends that the Statement of Probable Cause created by Officer Caplan was materially false and misleading. *Id.* at ¶ 12. Specifically, Peters contends that the Statement of Probable Cause misrepresented the information heard in the 911 calls that led police to respond to the underlying events that occurred on January 7, 2012. *Id.*

Following his arrest, Peters was held in the Prince George's County Detention Center for approximately one month before being placed on house arrest with electronic monitoring. *Id.* at ¶ 14. Peters remained on house arrest for six more months. *Id.* During that time, Peters was substantially deprived of his liberty, in that he could not leave his home for any purpose without the prior express approval of his case manager. *Id.* at ¶ 15. Additionally, Peters was denied permission to return to his employment as a tow truck driver. *Id.*

2

Ultimately, on August 3, 2012, prosecutors for the State of Maryland asked the court to enter a *nolle prosequi* as to all counts in Peters' criminal case. *Id.* at ¶ 16. Sometime after the entry of *nolle prosequi*, Peters was released from house arrest. *Id.* at ¶ 16-A. Then, on August 10, 2012, a "final order" was issued in his Maryland criminal proceeding. *Id.* On February 4, 2012, Peters sent a letter to the City notifying it of potential claims Peters may have against it arising from the events surrounding his arrest on January 7, 2012. *Id.*; *see also* ECF No. 14-2.

On February 3, 2014, Peters filed suit in the Circuit Court for Prince George's County raising various causes of action, including purported violations of 42 U.S.C. § 1983 and Articles 24 and 26 of the Maryland Declaration of Rights. *See* ECF No. 1 at ¶ 1. On March 27, 2014, Defendants removed the action to this Court on the basis of federal question jurisdiction. *See* ECF No. 1; *see also* 28 U.S.C. § 1331. Peters filed his First Amended Complaint on April 29, 2014. *See* ECF No. 12.

Defendants moved to dismiss the majority of Peters' claims on a variety of grounds, including that Peters failed to adequately allege the existence of a municipal policy or custom that proximately caused Peters' injuries and that Peters failed to comply with the mandatory notice provision of Section 5–304(b) of the LGTCA which required Peters to provide the City with notice of his state claims within 180-days of their accrual. Because Defendants attached to their joint motion to dismiss materials outside the pleadings that the Court did not exclude (*see* ECF No. 14-2), the Court informed Peters at its August 13, 2014 hearing that it would convert Defendants' motion to dismiss into a summary judgment motion, as to Peters' state law claims (counts three, four, and five). *See* ECF No. 22; *see also* Fed.R.Civ.P. 12(d). In doing so, the Court gave Peters twelve days after the hearing to respond to the material submitted by Defendants that was outside the pleadings. *See* ECF No. 22.

## II.     STANDARD OF REVIEW

Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d), however, requires courts to treat such a motion as a motion for summary judgment where matters *outside* the pleadings are considered and not excluded. *See* Fed.R.Civ.P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party - in this case, Peters - "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation and internal quotations omitted).

Here, both requirements have been met. First, on August 13, 2014, the Court notified Peters of its intention of treating Defendants' motion to dismiss as a motion for summary judgment as to Counts III, IV, and V. *See* ECF No. 22. Additionally, the Court provided Peters with a reasonable opportunity for discovery by giving him twelve days to respond to the material submitted by Defendants that was outside the pleadings. *See id.* To show that a reasonable opportunity for discovery has *not* been afforded, Peters would have had to file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002); *Hamilton v. Mayor & City Council of Balt.*, 807 F.Supp.2d 331, 341 (D. Md. 2011). Peters has done no such thing. Accordingly, the Court

will convert Defendants' motion to dismiss into a motion for summary judgment, as to Counts III, IV, and V.[1]

With respect to these counts, summary judgment is properly granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007) (citing Fed.R.Civ.P.56(c)). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo*

---

[1] Instead of providing the Court with any responsive or pertinent materials to Defendants' motion (as directed by the Court), Peters filed a motion asking the Court to reconsider its decision to convert Defendants' motion to dismiss into a motion for summary judgment. *See* ECF No. 23. Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case. *See* Fed.R.Civ.P. 54(b). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." In the Fourth Circuit, the precise standard that governs a motion for reconsideration of an interlocutory order is unclear. *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1472 (4th Cir. 1991). In determining whether it should reconsider an interlocutory order, a district court's consideration is not bound by the Rule 60(b) standard, though the court may at least reference parts of the Rule 60(b) standard. *Id.* at 1470; *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003) ("Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment."). Thus, the Court's analysis is guided by Rule 60(b) but is not bound by its strictures. Under Rule 60(b), a party may obtain relief from a judgment or final order based upon (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. *See* Fed.R.Civ.P. 60(b). Peters' motion for reconsideration fails to demonstrate the applicability of any of these aforementioned situations. Accordingly, Peters' motion for reconsideration is denied.

*Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).  If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial.  To satisfy this burden, the non-moving party "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999).  Although the Court "must draw all reasonable inferences in favor of the non-moving party," that party "may not create a genuine issue of material fact through mere speculation, or building one inference upon another." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Runnenbaum v. NationsBank*, 123 F.3d 156, 163 (4th Cir. 1997).  Indeed, the existence of only a "scintilla of evidence" is not enough to defeat summary judgment.  *Anderson*, 477 U.S. at 251.  Instead, the admissible evidentiary materials submitted must show facts from which the finder of fact could reasonably find in favor of the non-moving party. *Id.*

As to the remaining count (Count I – § 1983 against the City), the Court will not convert Defendants' motion to dismiss into a summary judgment motion as the exhibit attached to Defendants' motion has no relevance to this count.[2]  Accordingly, Count I will be evaluated against the familiar 12(b)(6) dismissal standard refined by *Twombly* and *Iqbal*.  Under this standard, the Court must determine whether the complaint alleges facts sufficient to state a plausible claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  While a plaintiff need not always plead a *prima facie* case to state a plausible claim, *see Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510-15 (2002), the "[f]actual allegations must be enough to raise a right to relief above the

---

[2]Defendants have not moved to dismiss Count II – the § 1983 claim against Officer Caplan. Accordingly, that cause of action remains and will proceed into discovery.

speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  In making such a determination, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  *Albright v. Oliver,* 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.,* 407 F.3d 266, 268 (4th Cir. 2005).

## III.   DISCUSSION

### A.      Federal Claims (Counts I and II):  42 U.S.C. § 1983

Peters asserts two federal constitutional claims under § 1983.  Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution.  *See* 42 U.S.C. § 1983.  Section 1983 also permits a plaintiff to bring a claim directly against a municipality if it causes a deprivation of a constitutional right through an official policy or custom.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Here, Peters has asserted § 1983 claims against both the City (Count I) and Officer Caplan (Count II) for violations of the Fourth, Fifth and Fourteenth Amendments.  *See* ECF No. 12 at ¶¶ 31, 36.  As mentioned, the City moved to dismiss Peters' § 1983 claim, while Officer Caplan has not.  Therefore, for purposes of this Memorandum, the Court will only address the viability of Peters' § 1983 claim against the City (Count I).  Peters' § 1983 claim against Officer Caplan (Count II) will proceed into discovery.

Peters contends that the City has violated his rights under § 1983 by subjecting him to an unreasonable search and seizure, a prolonged deprivation of liberty, and a denial of due process, which, he claims, violated his rights under the Fourth, Fifth and Fourteenth Amendments.  *Id.* at ¶ 31.  The City has moved to dismiss on the basis that Peters has failed to adequately plead the existence of a municipal policy or custom that proximately caused his injuries.  *See* ECF No. 14-

1 at 6-8.  Peters disagrees.  *See* ECF No. 15 at 5-8.  For the reasons discussed below, the Court agrees with the City and finds that Peters has failed to adequately plead the existence of municipal policy or custom that proximately caused his injuries.  Accordingly, the Court will grant the City's motion to dismiss Peters' § 1983 claim against the City (Count I).

### 1.      **Official Municipal Policy or Custom**

It is well settled that a municipality is only liable under § 1983 if the municipality causes a deprivation through an official policy or custom.  *See Monell*, 436 U.S. at 690.  Indeed, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original).  Thus, a local government, such as the City, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell*, 436 U.S. at 694.  And while *Monell* does not impose heightened pleading requirements above the basic "short and plain statement" requirement of Rule 8(a), *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), it still requires Peters to adequately plead "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of [his] rights."  *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

Peters can show the existence of a policy or custom in four main ways: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'"  *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citing *Carter v. Morris*, 164 F.3d

215, 217 (4th Cir. 1999)).  Peters' complaint makes no reference to an express policy, such as a written ordinance or regulation.  Nor does it make any reference to a policy established though the decisions of a person with final policymaking authority.  Instead, Peters attempts to allege the existence of an official policy or custom by (1) arguing that the City failed to train its officers (*see* ECF No. 12 at ¶ 30) and (2) identifying a purported pattern of false arrests conducted by the City's officers (*id.* at ¶¶ 19-28).

        **a.**        **Failure to Train**

With respect to the City's purported failure to train its officers, it is "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice . . .  [that] a city [may] be liable . . . ." *City of Canton*, 489 U.S. at 388-89 ("the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact").  Thus, Peters' "complaint should contain facts revealing: (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training." *Lewis v. Simms*, No. 11-2172, 2012 WL 254024, at *3 (D. Md. Jan. 26, 2012) (citing *Drewry*, No. 09–2340, 2010 WL 93268, at *4).  Peters has not even attempted to allege any such facts; instead, he has simply stated in broad, conclusory terms and in a variety of different ways that the City failed to train and supervise its officers.  *See* ECF No. 12 at ¶ 30.

Specifically, Peters alleges that the City maintained an "official policy" of "fail[ing] to use due care in the hiring of officers; fail[ing] to properly train and supervise its officers; fail[ing] to implement effective procedures for investigating allegations of police misconduct; fail[ing] to discipline officers who violate the Constitutional rights of private citizens through false arrests, malicious prosecutions, and brutal conduct; and generally fail[ing] to provide

safeguards against Constitutional abuses by its overzealous officers." *Id.* This allegation, however, is nothing more than a bare-bones generalization that a legal element (*i.e.* the policy-or-custom element) is met. Without more, Peters has failed to adequately allege the existence of a policy or custom through the City's purported failure to train its officers. *See Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984) (upholding the district court's dismissal of a plaintiff's *Monell* claim where the complaint alleged only that the City was "'grossly negligent' in failing adequately to train its personnel and that this exhibited 'callous disregard' for [the plaintiff]'s constitutional rights"); *Jackson v. Brickey*, 771 F. Supp. 2d 593, 597-98, 604 (W.D. Va. 2011) (concluding that a plaintiff's allegations of "institution-wide failure to train . . . and . . . . deliberate[ ] indifferen[ce] to Constitutional rights" constituted "naked assertion[s] devoid of further factual enhancement" that were "not entitled to the assumption of truth"); *Ross v. Prince George's Cnty.*, No. 11-1984, 2012 WL 1204087, at *9 (D. Md. Apr. 10, 2012) (dismissing plaintiff's *Monell* claim because the complaint "merely state[d] in conclusory terms that the County failed 'to adequately train and supervise officers in the proper use of force' and that it 'consistently failed' to investigate, discipline, and record acts of excessive force"). Peters has therefore failed to allege a *Monell* claim against the City for its purported failure to train its officers.

### b.    Pattern of False Arrests

Peters also attempts to allege the existence of an official policy or custom by identifying a purported pattern of false arrests conducted by the City's officers. *See* ECF No. 12 at ¶¶ 19-28. First, Peters relies on an event that occurred on December 31, 1999 when a Mount Rainier officer arrested two juveniles for underage possession of an alcoholic beverage. *Id.* at ¶ 20. During the arrest, a melee ensued resulting in the additional arrests of several other people who

were ultimately charged with various criminal offenses. *Id.* One of those offenders was convicted at trial but later had his conviction reversed by the Maryland Court of Special Appeals after it found the underlying arrest to be unlawful. *Id.* at ¶ 21. On remand, all remaining charges against that defendant were *nol prossed*. *Id.*

Next, Peters draws the Court's attention to an incident that arose in May 2000 when a young Hispanic man was cited for alcohol-related offenses. *Id.* at ¶ 23. According to Peters, the officer's report falsely suggested that the man had been driving his vehicle under the influence, as opposed to resting in his home when the police arrived. *Id.* at ¶ 24. Ultimately, the State *nol prossed* the charges against the young man. *Id.* at ¶ 25.

Finally, Peters cites a situation from 1999 when a man was purportedly attacked by a Mount Rainier officer for complaining to the officer that his car was being improperly towed. *Id.* at ¶ 26. Peters contends that the officer attacked the man because he was friends with the tow truck operator. *Id.* Following the alleged assault, the officer allegedly prepared a false report. At trial, the State asked that the malicious destruction of property charge be *nol prossed*. *Id.* at ¶ 27. The man was acquitted on all other charges. *Id.*

These three solitary examples are insufficient, as a matter of law, to demonstrate the existence of an official municipal custom or policy. An official custom or pattern can only be found where there are "*persistent and widespread* practices of municipal officials which although not authorized by written law, *are so permanent and well-settled as to have the force of law.*" *Spell*, 824 F.2d at 1385 (emphases added) (citing *Adickes v. S .H. Kress & Co.,* 398 U.S. 144, 167–168 (1970)). "'Custom and usage,' in the sense of 'persistent and widespread . . . practices' by municipal agents and employees, may be attributed to a municipality when the *duration and frequency* of the practices warrants a finding of either actual or constructive

knowledge by the municipal governing body that the practices have become customary among its employees." *See Spell*, 824 F.2d. at 1387 (emphasis added).

The three examples relied upon by Peters, all of which arose no less than ten years ago, are far too isolated and infrequent to constitute a "persistent and widespread" practice of false arrests conducted by City officers. *See Carter*, 164 F.3d at 220 ("meager history of isolated incidents [fails to prove] the widespread and permanent practice necessary to establish municipal custom"); *Spell*, 824 F.2d at 1391 ("proof of a single constitutional violation by police officers fails to support an inference that the violation resulted from either a municipal 'policy' of deficient training" or "a condoned custom of comparable practices"); *Sims v. Greenville Cnty.*, 211 F.3d 1265 (4th Cir. 2000) ("the single incident . . . to which [plaintiff] can point in which an inmate was injured by what was arguably the use of excessive force during a multiple-officer takedown, is simply not a sufficient history of a widespread and permanent practice that could establish a municipal custom."); *Lytle*, 197 F. Supp. 2d at 494 (E.D. Va. 2001) ("It is well settled that isolated incidents of unconstitutional conduct by subordinate employees are not sufficient to establish a 'custom' for § 1983 purposes."), *aff'd on other grounds*, 326 F.3d 463 (4th Cir. 2003); *Neiswonger v. Hennessey,* 89 F. Supp. 2d 766, 777 (N.D. W. Va. 2000) (two prior incidents insufficient to demonstrate official policy or custom); *Drewry*, No. 09–2340, 2010 WL 93268, at *3 (plaintiff's complaint did "not show a policy or custom sufficient for local government liability because it is limited to an incident involving one officer on one occasion"); *McDonnell v. Hewitt-Angleberger*, No. 11-3284, 2012 WL 1378636, at *3 (D. Md. Apr. 19, 2012) ("[T]he existence of a total of three isolated incidents (including Plaintiff's incident) does not demonstrate sufficient duration or frequency to impute constructive knowledge of a custom of brutality to the County."). Given the isolated and distant nature of these events, it cannot be said

that these allegedly unconstitutional practices were so permanent or well-settled as to have the force of law. *See Spell*, 824 F.2d at 1385.  Accordingly, Peters has not alleged a plausible *Monell* claim.  Count I is therefore dismissed.

**B.      State Claims (Counts III, IV, and V):  Compliance with Local Government Tort Claims Act**

In addition to Peters' § 1983 claims, he has also sued Officer Caplan for wrongful detention (Count IV), malicious prosecution (Count V), and violations of Articles 24 and 26 of the Maryland Declaration of Rights (Count III).   Officer Caplan has moved to dismiss the wrongful detention and malicious prosecution claims for failure to comply with the mandatory notice provision of the LGTCA.   He has not, however, moved to dismiss the Maryland Declaration of Rights claim.[3]

Section 5–304(b) of the LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim

_____

[3] As mentioned, the Court has converted Defendants' motion to dismiss Peters' state claims into a motion for summary for judgment.  Accordingly, the Court will evaluate these claims (Counts III, IV and V) under Fed.R.Civ.P. 56.  Because Officer Caplan did not move to dismiss Count III (Maryland Declaration of Rights claim against Officer Caplan), that action will proceed to discovery, like Count II (§1983 against Officer Caplan).   Count III, however, also includes an action against the City for violations of Articles 24 and 26 of the Maryland Declaration of Rights.   *See* ECF No. 12 ¶¶ 39-41. Article 24 of the Maryland Declaration of Rights is "the state's constitutional equivalent to the Fourteenth Amendment."   *Randall v. Prince George's Cnty*, 302 F.3d 188, 193 (4th Cir. 2002).  Article 26, on the other hand, is "Maryland's analogue to the Fourth Amendment."  *Randall v. Peaco*, 175 Md. App. 320, 330 (2007).  Claims brought under Article 24 are "analyzed in the same manner as if the claim were brought under Article 26."  *Id.*; *see also Okwa v. Harper*, 360 Md. 161, 203–04 (2000).  "In both instances, the claim is assessed under Fourth Amendment jurisprudence, rather than notions of substantive due process, *precisely like the analysis employed for claims brought under 42 U.S.C. § 1983*."  *Id.* (emphasis added); *see also Williams v. Prince George's County*, 685 A.2d 884, 895 (Md. Ct. Spec. App. 1996).  Thus, for the same reasons discussed infra Section III.A, the Court will dismiss Peters' Maryland Declaration of Rights claim against the City.  *See Drewry v. Stevenson*, No. 09-2340, 2010 WL 93268, at *3 (D. Md. Jan. 6, 2010) (simultaneously dismissing Maryland Declaration of Rights claim with the dismissal of plaintiff's § 1983 claim against the city without separate analysis); *Linnemann v. City of Aberdeen*, No. 12-2021, 2013 WL 3233526, at *11 (D. Md. June 25, 2013) (same).

required by this section is given within 180 days after the injury." Md.Code Ann., Cts. & Jud. Proc. § 5-304(b). This notice requirement has long been a condition precedent to the claimant's right to maintain a tort action for damages against a local government under Maryland law, *Grubbs v. Prince George's Cnty.,* 267 Md. 318, 320–21 (1972), and failure to comply with it will bar such tort claims. *See Renn v. Bd. of Comm'rs,* 352 F. Supp. 2d 599, 602 (D. Md. 2005).

The parties do not dispute that Peters provided notice to the City on February 4, 2013; instead, the parties dispute whether that notice was timely. For notice under the LGTCA to be timely, it must be given within 180 days from when the "causes of action arose, *i.e.*, when the legally operative facts permitting the filing of [the] claim[] came into existence[,]" or "when facts exist[ed] to support each element." *Heron v. Strader*, 361 Md. 258, 264 (2000). The key issue therefore is ascertaining the date on which Peters' causes of action accrued.

### 1.      Wrongful Detention – Count IV

Defendants contend that Peters' wrongful detention claim arose on the date of his *arrest* – January 7, 2012. *See* ECF No. 14-1 at 5. As such, Defendants argue that Peters had until July 5, 2012 to put the City on notice of his wrongful detention claim. *Id.* Because Peters did not notify the City until February 4, 2013, Defendants contend that Peters failed to comply with the notice requirement and that his wrongful detention claim should be dismissed. *Id.* Peters, on the other hand, argues that his action for wrongful detention did not arise until the date of his *release* from house arrest, which, according to Peters, occurred sometime between August 3, 2012 and August 10, 2012. *See* ECF No. 15 at 3. The first issue therefore is whether Peters' wrongful detention claim accrued at the time of his arrest on January 7, 2012, or at the time of his release from house arrest sometime in August 2012.

Both parties rely on *Heron v. Strader,* 361 Md. 258 (2000) to support their respective positions. *Heron* was a false arrest case that involved a plaintiff who had been arrested by the Prince George's County police on August 24, 1997 for resisting arrest, obstructing the police, and disorderly conduct. The plaintiff was released from prison on August 26, 1997, and later acquitted of all charges. In May of 1998, about two months after his acquittal, the plaintiff provided a Notice of Claim to Prince George's County, alleging false imprisonment, false arrest, and malicious prosecution. Prince George's County filed a motion to dismiss the complaint, asserting that the notice was untimely as it was provided more than 180-days from the date of arrest. The circuit court granted the motion to dismiss, and the issue eventually reached the Maryland Court of Appeals.

The Court of Appeals explained that the LGTCA's notice period begins when "his causes of action arose, *i.e.*, when the legally operative facts permitting the filing of [his claims] came into existence[,]" or "when facts exist[ed] to support each element." *Id*. at 264. For wrongful detention claims, the court held that the plaintiff's "injuries for the purposes of the LGTCA [] occurred, on August 24, 1997, the date he was arrested and detained by the police." *Id.* at 265. At first glance, this conclusion might seem to support Defendants' claim that the 180 day period began on January 7, 2012 – the date of Peters' arrest. Closer inspection of the *Heron* case, however, suggests otherwise. Indeed, the Maryland Court of Appeals recently revisited its holding in *Prince George's Cnty. v. Longtin*, 419 Md. 450 (2011). The *Longtin* court stated:

> Unlike Longtin, Heron was in prison for only two days. There was no need to distinguish between the date of arrest and the date of release; whichever was used, the notice was too late. Instead, the distinction important in *Heron* was between the date of arrest (and release), and the much later date when the defendant was acquitted. This is true for the few cases cited in *Heron* which used a "date of arrest" rule; the plaintiff had been imprisoned for a short period of time, and the court had to distinguish between the earlier date of

arrest/release and the later date of acquittal or dismissal of the charges. *See Michaels v. New Jersey,* 955 F.Supp. 315, 327 (D.N.J.1996) (distinguishing date of arrest from date that court proceedings terminated); *Pisano v. City of Union City,* 198 N.J.Super. 588, 487 A.2d 1296 (Law Div.1984) (claimant was released on bail); *Deary v. Three Un–Named Police Officers,* 746 F.2d 185 (3rd Cir.1984) (plaintiff released on bail the same day as arrest); *see also Livingston v. Consolidated City of Indianapolis,* 398 N.E.2d 1302 (Ind.Ct.App.1979) (interpreting the Indiana Tort Claims Act's 180–day notice requirement as beginning on the day Livingston was arrested, charged, and released from custody.).

Moreover, the *Heron* court cited with approval multiple decisions which identified the date of release as the date a false arrest or false imprisonment claim accrues. *See Heron,* 361 Md. at 266–69, 761 A.2d at 60–63. These cases include *Collins v. County of Los Angeles,* 241 Cal.App.2d 451, 50 Cal.Rptr. 586, 588 (1966) (100–day period of California Tort Claims Act began on the day the imprisonment terminated); *Ragland v. New York City Hous. Auth.,* 201 A.D.2d 7, 613 N.Y.S.2d 937, 939 (1994) ("The petitioner's claim sounding in false arrest [and false imprisonment] accrued on [the date] on which he was released from custody."); *Boose v. Rochester,* 71 A.D.2d 59, 421 N.Y.S.2d 740 (N.Y.App.Div.1979) (notice was untimely because it was given more than 90 days after arrestee's confinement terminated); *Allee v. New York,* 42 A.D.2d 899, 347 N.Y.S.2d 708 (N.Y.App.Div.1973) (cause of action for false arrest and imprisonment arose at the time of plaintiff's actual physical release from confinement).

The New York courts, cited extensively in *Heron,* have occasionally used the "date of arrest" rule, but reaffirmed that it is the date of release that matters when dealing with a prolonged pretrial detention. *See Collins v. McMillan,* 102 A.D.2d 860, 477 N.Y.S.2d 49 (1984) (three week detention); *Bennett v. New York,* 204 A.D.2d 587, 612 N.Y.S.2d 201 (1994) (four month detention). In both *Collins* and *Bennett,* the courts faced a similar situation to Longtin's, in that the plaintiffs were held in prison for a prolonged period, but released before trial. Those courts faced a similar interpretative choice: if the notice period commenced on the *arrest date,* the notice was untimely, but if it commenced on the *release date,* weeks or months later, the notice was timely. Those courts selected the latter date. *See Collins,* 477 N.Y.S.2d at 50 (90–day notice period began on his date of release); *Bennett,* 612 N.Y.S.2d at 201 ("In an action for false arrest or false imprisonment ... [the notice period] commences on the day the plaintiff is released from actual custody.").

*Longtin*, 419 Md. at 473-74.

With this background in mind, the *Longtin* court concluded that based on "*Heron's* reliance on analogous New York cases, [the court] discern[s] an implicit recognition that when a person is arrested, imprisoned, and released without a trial, the notice period for a false arrest and imprisonment claim begins on release." *Prince George's Cnty. v. Longtin*, 419 Md. 450, 474 (2011). The court went on to observe that:

> When [] a defendant is imprisoned while awaiting trial, but never tried, there is sound policy for commencing the notice period upon a plaintiff's release from prison. A falsely imprisoned person's failure to immediately initiate a civil tort claim is not usually caused by neglect or imprudence, but instead by "*the reality that the victim may not be able to sue while he is still imprisoned.*" Severe limitations are (rightfully) placed on a prisoner's ability to communicate with the outside world, and his first few months in prison are presumably spent in preparation for the criminal proceedings.

*Id. at* 477-78 (internal citations omitted). As such, the court held "that when a person is arrested, imprisoned, but released before trial, in order to file a false arrest and imprisonment claim, he must file his notice of claim within 180 days of his release from prison." *Id.* at 479.

Although Peters was technically released from jail one month after his arrest, he was immediately placed under house arrest for six months "during which time he was not permitted to work and his liberty was severely restricted." *See* ECF No. 14-2 at 1 (Feb. 4, 2013 Notice Letter); *see also* ECF No. 12 at ¶ 15 ("While on house arrest, Peters was substantially deprived of his liberty, in that he could not leave his home for any purpose except with the express prior approval of his Case Manager . . . ."). Under these circumstances, Peters' failure to immediately initiate his lawsuit against the City was likely not caused by his neglect or imprudence, but by the fact that his freedom of movement was severely restrained by his one month arrest and six

month house arrest.  Accordingly, it is entirely consistent with the decisions in *Longtin*, *Heron*,

*Collins*, and *Bennett* to start Peters' 180-day clock from the date of his release from house arrest.

But even starting the 180-day clock from the date of Peters' release from house arrest, he

still has not adequately demonstrated that he provided the City with notice of his claim within

this 180-day period.  Specifically, Peters' complaint does not allege *when* he was actually

released from house arrest.  In fact, Peters concedes that this "date [was] not alleged in the

amended complaint."  ECF No. 15 at 4 (Peters' Opp.) ("Peters' false arrest and false

imprisonment claims did not ripen until when Peters was released on some date not alleged in the

amended complaint.").  Based on the allegations in the complaint, however, it appears that Peters

was released from house arrest sometime between August 3, 2012 (the date he was *nol prossed*)

and August 10, 2012 (the date a "final order" was issued in his Maryland criminal proceeding).

*See* ECF No. 12 at ¶¶ 16 ("On or about August 3, 2012, after the State procured one or more

continuances in Case No. CT120344B over PETERS' objections, the State asked the Court to

enter a *nolle prosequi* as to all counts in Case No. CT120344B."); and 16A ("Following the entry

of *nolle prosequi*, PETERS was eventually released from house arrest with electronic monitoring

and, on August 10, 2012, a final order was issued in Case No. CT120344."). Without knowing

this exact date, however, the Court is unable to discern from the papers whether Peters' complied

with the notice provision.  For example, if Peters was released from house arrest any time

between August 3, 2012 and August 8, 2012, his February 4, 2013 notice would have been

untimely.  If, however, Peters was released from house arrest any time on or after August 9,

2012, his February 4, 2013 notice would have been timely.

The Court raised these concerns with Peters at the August 13, 2014 hearing during which

Peters was unable to identify the exact date Peters was released from house arrest.   After

informing Peters of the Court's decision to convert Defendants' motion to dismiss into a summary judgment motion[4], the Court informed Peters that it would have twelve days to provide the Court with information to establish the date of Peters' release.  Peters, however, failed to provide the Court with any such information or make a request for additional time  Having failed to provide the Court with this highly relevant (and easily obtainable) information, the Court is still unable to draw the inference that Peters was released from house arrest any time after August 8, 2010.  *See Brown v. Rose's Stores, Inc.*, 145 F.3d 1323 (4th Cir. 1998) ("When determining a motion for summary judgment, the court need not credit the non-movant with every possible inference that can be drawn from the evidence. Only reasonable inferences warrant consideration. A reasonable inference is one that is within the range of reasonable probability.  An inference that is 'so tenuous that it rests merely upon speculation and conjecture' should not be considered.") (citation omitted).  Accordingly, there is no genuine issue of material fact as to when Peters' was released from house arrest, which, given the August 3, 2012 *nol pros* date, appears to have occurred on or before August 8, 2012. Peters' notice was therefore untimely and the Court will grant Defendants summary judgment for Peters' wrongful detention claim unless he can demonstrate "good cause" for his failure to comply with the notice requirement of the LGTCA (discussed infra Section B.3).

## 2.      Malicious Prosecution – Count V

With respect to Peters' malicious prosecution claim, the parties agree that a claim for malicious prosecution arises when the criminal proceeding terminates in the plaintiff's favor.

---

[4] Defendants attached to their motion to dismiss a letter sent by Peters to the City establishing that notice was not provided until February 4, 2010.  *See* ECF No. 14-2.

The parties disagree, however, as to when Peters' previous criminal proceeding actually terminated in his favor.

According to Defendants, Peters' criminal proceeding terminated in his favor on August 3, 2012 when Peters' charges were *nol prossed*.  *See* ECF No. 14-1 at 5-6.  Using August 3, 2012 as the accrual date, Defendants contend that Peters was required to notify the City of his malicious prosecution claim by January 30, 2013.  *Id.* at 6.  Because Peters notified the City on February 4, 2013, Defendants argue that Peters missed the deadline by five days and that his malicious prosecution claim should therefore be dismissed.  *Id.*  Peters, on the other hand, contends that his criminal proceeding did not terminate until August 10, 2012 when a "final order was issued in Case No. CT120344."  ECF No. 12 at ¶ 16(A).  The dispositive question therefore is whether Peters' criminal proceeding terminated in his favor when the charges against him were *nol prossed* on August 3, 2012.

Section 659 of the (Second) Restatement of Torts states that, in a malicious prosecution action, proceedings terminate in favor of the accused upon "the formal abandonment of the proceedings by the public prosecutor."  Restatement (Second) Torts, § 659(c).[5]  Although not argued directly in Defendants' papers, that is, in effect, what Defendants contend here:  upon the government's decision to *nol pros* all of the charges against Peters in his state criminal proceeding, the prosecutors abandoned their prosecution.  *See* ECF No. 14-1 at 5.

"A *nolle prosequi* is an official declaration by the State, announcing that it will not pursue the charges in a particular charging document."  *In re Darren M.,* 358 Md. 104, 112

---

[5] The Maryland Court of Appeals has indicated that Maryland follows the Restatement (Second) of Torts on the issue of what constitutes termination in favor of the accused in a malicious prosecution case.  *See Banks v. Montgomery Ward & Co.*, 128 A.2d 600, 604 (1957); *see also State v. Meade*, 647 A.2d 830, 838-39 (1994).

(2000).[6]  In effect, "the *nolle prosequi* wipes out the charges pending against the defendant and precludes the State from prosecuting the defendant under the charging document that was *nolle prossed.*"  *Id*.  The State has an absolute right, without court approval, to enter a *nolle prosequi* to charges, provided it does so in open court.  *Gray v. State*, 38 Md. App. 343, 357 (1977).  The *nol pros* of a charging document or of a count is a final disposition of that charging document or count, and there can be no further prosecution under the *nol prossed* charging document or count.  *State v. Moulden,* 292 Md. 666, 673 (1982).

Typically, when a prosecutor *nol prosses* all of the charges in a criminal indictment, and does so with the intent of formally abandoning the entire criminal proceeding, the proceeding has terminated in the plaintiff's favor and a cause of action for malicious prosecution arises at that time.  *See Bozman v. Bozman*, 146 Md. App. 183, 201 (2002) ("the allegation of malicious prosecution contained in Count II did not arise until the State's Attorney entered a *nolle prosequi* of the criminal charge that underlay the claim of malicious prosecution") *rev'd on other grounds*, 376 Md. 461, 830 A.2d 450 (2003); *see also e.g.*, *Hess v. Missouri Pac. R. Co.*, 657 F. Supp. 1066, 1069 (S.D. Ill. 1987) ("plaintiff's malicious prosecution claim did not arise from that accident, and, in fact, did not arise until the criminal charges were *nolle prossed* in September, 1985, some nine months after the release was signed"); *Mastroianni v. Deering*, 835 F. Supp.

---

[6] *See* Md. Rule 4–247, which provides:

(a) Disposition by Nolle Prosequi. The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court. The defendant need not be present in court when the nolle prosequi is entered, but in that event the clerk shall send notice to the defendant, if the defendant's whereabouts are known, and to the defendant's attorney of record.

(b) Effect of Nolle Prosequi. When a nolle prosequi has been entered on a charge, any conditions of pretrial release on that charge are terminated, and any bail bond posted for the defendant on that charge shall be released. The clerk shall take the action necessary to recall or revoke any outstanding warrant or detainer that could lead to the arrest or detention of the defendant because of that charge

1577, 1582 (S.D. Ga. 1993) ("The entry of *nolle prosequi* constituted termination of the proceeding in the Plaintiff's favor."); *Bratton-Bey v. Straughan*, No. 13-1964, 2014 WL 35949, at *9, n.5 (D. Md. Jan. 31, 2014) (case favorably terminated when prosecutors *nol prossed* charges against defendant); *Harris v. City of Philadelphia*, No. 97-3666, 1998 WL 481061, at *4 (E.D. Pa. Aug. 14, 1998) ("Plaintiff's malicious prosecution claim, however, accrued on the date the criminal proceedings against him were favorably terminated by virtue of the District Attorney's grant of *nolle prosequi* – on July 20, 1995.").

Peters has offered no support for the position that his criminal proceeding favorably terminated on August 10, 2012 – the date on which the court issued its final order in the case.  In fact, Peters' own words suggest that his case favorably terminated when it was *nol prossed*.  *See* ECF No. 14-2 at 1 (Feb. 4, 2013 Notice Letter) (stating that "[a]ll charges were terminated by way of a *nolle prosequi*").  At the same time, however, Peters contends that "the criminal case against [him] was not *completely over* until August 10, 2012".  *See* ECF No. 15 at 4 (emphasis added).  In doing so, Peters conflates *formal* termination with *favorable* termination.  The test for when a malicious prosecution claim accrues does not turn on when a criminal proceeding is *formally terminated*, but when the case terminated *in Plaintiff's favor*.  By all indications, Peters' criminal proceeding terminated in his favor when all of the charges against him were *nol prossed* on August 3, 2012.  There is simply nothing to suggest that by *nol prossing* Peters' charges the prosecutors intended to do anything other than abandon their entire criminal prosecution of Peters.  Accordingly, there is no genuine issue of material fact as to when Peters' criminal proceeding terminated in his favor, which occurred on August 3, 2012 when Peters' case was *nol prossed*.  As such, Peters was required to provide notice to the City of his malicious prosecution claim no later than January 30, 2013.  Because he did not provide notice until February 4, 2013,

Peters' malicious prosecution claim is untimely and summary judgment will be granted in Defendants' favor unless Peters can demonstrate "good cause" for his failure to comply with the notice requirement (discussed below).

### 3.     Good Cause

As a fallback, Peters contends that any failure to comply with the notice provision should be excused pursuant to the "good cause" exception codified in § 5–304(d) of the LGTCA. *See* ECF No. 15 at 4-5.

Section 5-304(c) provides that the notice requirement of the LGTCA may be waived for good cause and lack of prejudice to the defendant. *See* Md.Code Ann., Cts. & Jud. Proc. § 5–304(d) ("[U]nless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given."). The test for good cause is "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Rios v. Montgomery Cnty., Md.,* 386 Md. 104, 141 (2005) (internal quotations omitted).

Typically, courts have considered the following factors that generally have been found to constitute good cause: "[1] excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard),  [2] serious physical or mental injury and/or location out-of-state, [3] the inability to retain counsel in cases involving complex litigation, . . . [4] ignorance of the statutory notice requirement [,] or (5) misleading representations made by [a] representative of the local government." *Wilbon v. Hunsicker*, 913 A.2d 678, 693 (2006) (internal quotations omitted).  Peters has not demonstrated that this case falls within any of these

"good cause" categories; instead, Peters advances two separate contentions to support his "good cause" argument.

First, Peters contends that "good cause" exists because he simply "miscalculated the due date by counting from the day that the criminal case ended rather than the date that the *nolle prosequi* was entered." ECF No. 15 at 5. An inadvertent miscalculation, however, is not "good cause" for excusing one's failure to meet a court deadline. *See e.g.*, *Cobell v. Norton,* 213 F.R.D. 1, 42-43 (D.D.C. 2003) ("inadvertent miscalculation of the date by which [plaintiffs] were required to respond to defendants' filings" not excusable neglect); *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 370 (2d Cir. 2003) (holding that "the district court abused its discretion when it decided that [defense] counsel's determination of the wrong date by which [defendant] had to file a notice of appeal constituted excusable neglect"); *Lowry v. McDonnell Douglas Corp.,* 211 F.3d 457, 464 (8th Cir. 2000) (failure to calculate correctly the thirty-day appeal period was "garden variety attorney inattention," and district court abused its discretion in holding that "experienced counsel's misapplication of clear and unambiguous procedural rules" was excusable neglect).

Second, Peters contends that because Defendants have not been prejudiced by Peters' lack of notice, the Court should waive the notice requirement. *See* ECF No. 15 at 4. In advancing this argument, however, Peters misreads § 5–304(d). Indeed, the Maryland Court of Appeals recently explained:

> By the language of the statute, the burden is on the claimant first to show 'good cause.' Then, if the local government cannot 'affirmatively show that its defense has been prejudiced by lack of required notice,' the court 'may' hear the case despite the faulty notice. This 'good cause' exception leaves the courts some discretion in enforcing the notice requirement, and allows a court, in certain circumstances, to avoid an unjust result.

*Longtin*, 419 Md. at 467 (quoting Md. Code Ann., Cts. & Jud. Proc. § 5–304(d)).

Thus, contrary to Peters' argument, §5–304(d) does not require a defendant to affirmatively show prejudice; rather, "[t]he Defendants' burden to show prejudice does not arise *until* a plaintiff establishes 'good cause' to justify the failure to comply with the notice requirement." *Curtis v. Pracht*, 202 F. Supp. 2d 406, 414 (D. Md. 2002) (emphasis added); *see also Martino v. Bell*, 40 F.Supp.2d 719, 720 (D. Md. 1999); *Downey v*, 866 F. Supp. at 889–90. Plaintiff has alleged no facts demonstrating "good cause" for his failure to meet the notice requirement. Any lack of prejudice suffered by Defendants is therefore irrelevant and Peters' failure to comply with the notice requirement is not excused. Accordingly, the Court will grant summary judgment in favor of Defendants as to Peters' wrongful detention claim (Count IV) and malicious prosecution claims (Count V).

## IV.     CONCLUSION

For the reasons discussed, the Court will GRANT Defendants' Motion to Dismiss Peters' § 1983 claim against the City (Count I). Additionally, the Court will also GRANT summary judgment for Defendants as to Peters' wrongful detention claim (Count IV) and malicious prosecution claim (Count V). Finally, the Court will GRANT summary judgment for the City as to Peters' Maryland Declaration of Rights claim (Count III). Peters' § 1983 claim against Officer Caplan (Count II) and his Maryland Declaration of Rights claim against Officer Caplan (Count III) remain and will proceed to discovery upon the filing of an answer by Officer Caplan.

Dated: <u>September 29, 2014</u>                     <u>            /S/            </u>
                                                      George Jarrod Hazel
                                                      United States District Judge