**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 MAR 24  A 9: 37

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

```
MONTELIS PETERS,                    *

        Plaintiff,                  *

                                    *

v.                                  *          Case No.: GJH-14-00955

                                    *

CITY OF MOUNT RAINIER, et al.,      *

        Defendants.                 *

                                    *
```

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

This is a civil rights action brought by Plaintiff Montelis Peters against the City of Mount Rainier and Corporal Rob Caplan for purported violations of 42 U.S.C. § 1983 and Articles 24 and 26 of the Maryland Declaration of Rights arising from Peters's arrest on January 7, 2012. This Memorandum and accompanying Order address Caplan's Motion for Summary Judgment, ECF No. 36, Peters's Cross Motion for Summary Judgment, ECF No. 37, Caplan's Motion to Strike, ECF No. 40, and Peters's Motion to Strike, ECF No. 43. A hearing is unnecessary. Loc. R. 105.6 (D. Md. 2014). For the reasons stated below, Caplan's Motion for Summary Judgment is granted. The remaining motions are denied.

## I.     BACKGROUND[1]

On January 7, 2012, police officers were dispatched to the 4300 block of 28th Place "in response to two calls by unidentified citizens, one for 'unknown trouble,' and the second for a

---

[1] Any disputed facts are resolved in favor of Peters for purposes of Caplan's Motion for Summary Judgment.

robbery in progress." ECF No. 36-3 at 4.[2] The male caller, who reported "unknown trouble," described a woman screaming. *Id.* The female caller told the dispatcher that there appeared to be a "Muslim lady" with a scarf being robbed by a short, "Spanish" man, possibly at gunpoint. ECF No. 36-5 at 16–17; ECF No. 36-4. The female caller also mentioned that two vehicles were involved and she stayed on the phone with the dispatcher until the police arrived. ECF No. 36-5 at 17–21; ECF No. 36-4.

Sergeant Andre Williams stated that he was the first officer on the scene, ECF No. 36-5 at 24–25, arriving within minutes of the dispatch, ECF No. 36-3 at 4. When Williams arrived, he observed a man matching the description of a short, "Spanish" male and a woman wearing a headscarf. ECF No. 36-5 at 25–26. The couple told Williams that two African-American men attempted to rob them at knife-point and ran away when the couple began screaming. ECF No. 36-3 at 4. The male said that the men were wearing jackets, one light and one dark, and he pointed Williams toward Arundel Road to indicate the direction the men had fled. *Id.*

Williams drove toward Arundel Road, encountering Plaintiff Montelis Peters and his acquaintance, Darren Carlos Etheredge, just two blocks from the scene of the attempted robbery. ECF No. 36-4; ECF No. 36-3 at 5. Peters and Etherege are both African-American. Based upon images taken by a surveillance video that day, Peters and Caplan were wearing what appear to be heavy sweatshirts with hoods, one light and one dark. ECF No. 37-4 at 2–4. According to Defendant Corporal Rob Caplan, who testified to hearing the radio dispatch live, ECF No. 36-6 at 15, Caplan joined Williams after Williams stopped the two men, ECF No. 36-5 at 38; ECF No. 36-6 at 11. Both Peters and Etherege were stopped at gunpoint, ordered to the ground and searched. ECF No. 12 ¶ 8; ECF No. 36-3 at 5. Officer Caplan recovered a folding knife with a

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

four-inch blade, black and silver in color, from Peters's pocket. ECF No. 36-3 at 5. Peters had

just come from cashing his paycheck, ECF No. 37-3 at 2; ECF No. 37-1 at 5, and had his paystub

on his person at the time, ECF No. 37-4 at 1. The officers told Peters and Etheredge that they fit

the description of robbery suspects. ECF No. 37-3 at 2. The victims, who were transported to the

scene of the arrest by Officer Paul Corridean, identified Peters, Etherege, and the knife used in

the attempted robbery. ECF No. 36-3 at 5.

After Peters and Etheredge were taken into custody, Caplan prepared, signed, and

presented to a Commissioner of the District Court of Maryland for Prince George's County a

Statement of Probable Cause. ECF No. 36-10. The Statement of Probable Cause, unedited and

read in full, states:

> On January 7th 2012 at approximately 2147 hours officers responded to 4300-blk
> of 28th place, Mount Rainier Prince Georges County Maryland for a report of an
> armed robbery in progress. Upon arrival PFC Corridean encountered the caller.
> Velasquez, Carmon (V1) pointed toward Arundel Road advising PFC Corridean
> that the subject went that way Maltes, Jaime(V2) advised PFC Corridean that two
> subjects attempted to rob them with a knife. A lookout was broad cast to other
> officers and two subjects matching the description were stopped by myself and
> Sergeant Williams at 2401 Arundel Road. The Subjects were identified as (A1)
> Etheredge, Darren Carlos 9/06/1980 and (A2) Peters, Montelis Anthony
> 3/28/1978.
> Both victims were transported to the location and positively identified the subjects
> as the same persons who just attempted to rob them, and also described the knife
> that was later found on (S2). The victims were then transported to the Mount
> Rainier Police Statement and completed written statements regarding the events
> that transpired.
> All events occurred in Mount Rainier, Prince Georges County Maryland.

ECF No. 36-10. The Statement of Probable Cause resulted in Peters being charged with

attempted robbery with a deadly weapon and assault. ECF No. 12-1 ¶ 10. The information

reported in the Statement of Probable Cause was later used to procure a nine-count indictment

charging Peters with various crimes. *Id.* ¶ 11. Officer Caplan has acknowledged that he did not

know "the exact chain of events" at the time he wrote the Statement of Probable Cause. ECF No. 36-6 at 48.

On January 8, 2012, Etherege provided a written statement to the police. In that statement, he said that he "accidentally bumped into this Spanish couple and [Peters] pulled out his knife trying to get there [sic] money." ECF No. 36-16 at 1. According to Etherege, prior to approaching them, Peters said he was going to "come get this money from these bitches." ECF No. 36-16 at 2. Peters also provided a written statement. In his statement, Peters denied any interaction with the Hispanic couple, however, he acknowledged smoking PCP that night and, when asked when he had smoked the PCP, he responded "about 20 min B4 the robery [sic] attempt." ECF No. 36-14 at 1–2. Later, Peters issued an apology letter, which stated in part, "I have no recollection of an altercation[.] I was under the influence of a substance and ask that you forgive me for my actions." ECF No. 36-17.

Following his arrest, Peters was held in the Prince George's County Detention Center for approximately one month before being placed on house arrest for six months. ECF No. 12-1 ¶ 14. During that time, Peters could not leave his home for any purpose without the prior express approval of his case manager. *Id.* ¶ 15.

Caplan believes the officers attempted to get the victims to come to court and they declined. ECF No. 36-6 at 41–42. Eventually, prosecutors for the State of Maryland asked the court to enter a nolle prosequi as to all counts in Peters's criminal case, *id.* ¶ 16, and a "final order" was issued in his Maryland criminal proceeding on August 10, 2012, *id.*

On February 3, 2014, Peters filed suit in the Circuit Court for Prince George's County raising various causes of action, including purported violations of 42 U.S.C. § 1983 and Articles 24 and 26 of the Maryland Declaration of Rights. *See* ECF No. 1 ¶ 1. On March 27, 2014,

4

Defendants removed the action to this Court based on federal question jurisdiction. *See* ECF No. 1; *see also* 28 U.S.C. § 1331. Peters filed his First Amended Complaint on April 29, 2014. *See* ECF No. 12.

Defendants moved to dismiss the majority of Peters's claims. ECF No. 14. However, Defendants did not move to dismiss Count II, the § 1983 claim against Caplan, or Count III, the Maryland Declaration of Rights claim against Caplan. ECF No. 25 at 6 n.2. The Court converted Defendants' motion to a motion for summary judgment as to Counts III, IV, and V because Defendants attached to their joint motion to dismiss materials outside the pleadings that the Court did not exclude. ECF No. 25; ECF No. 14-2. The Court granted Defendants' motions, dismissing Counts I, III, IV, and V. ECF No. 25; ECF No. 26.

Defendant Caplan has moved for summary judgment as to all claims against him, ECF No. 36, and Plaintiff has filed a cross-motion for summary judgment, ECF No. 37.

## II.    MOTIONS TO STRIKE

Before turning to the merits of the parties' dispositive motions, the Court considers each party's motion to strike. *See* ECF No. 40; ECF No. 43. For the reasons that follow, both motions are denied.

Defendant moves to strike Plaintiff's Supplemental Affidavit, ECF No. 37-4, stating that the affidavit is not relevant to the issues before the Court. ECF No. 40-1 at 3.[3] Defendant argues that whether "Plaintiff purportedly protested his innocence and insisted that he had just cashed his paycheck has no bearing on whether Officer Caplan, not to mention Sergeant Williams, had probable cause to effect his arrest." *Id.* Defendant also argues that the alleged timing of Plaintiff

---

[3] Defendant also sought to strike Plaintiff's Supplemental Affidavit on the basis that the affidavit was improperly filed. ECF No. 40-1 at 2. However, in his reply, Defendant noted that he "is no longer seeking to strike Plaintiff's affidavit based upon form; however, the affidavit remains defective in substance." ECF No. 45 at 1.

cashing his check and whether Plaintiff was wearing a hooded sweatshirt instead of a jacket are both irrelevant. *Id.* The Court disagrees. Whether the Plaintiff had a paystub and told the officers that he just cashed his check at a location easily accessible to the Defendant is potentially relevant for determining probable cause. *See Clipper v. Takoma Park*, 876 F.2d 17, 20 (4th Cir. 1989) (finding that an officer's failure to investigate the leads that the suspect provided, combined with "the speculative nature of the other information and investigative instincts" upon which the officer relied, was sufficient to negate probable cause). Likewise, there is clear relevance to information relating to Plaintiff's appearance on January 7, 2012, in light of Plaintiff's argument that he did not fit the description provided to the officers. Accordingly, Defendant's motion to strike Plaintiff's Supplemental Affidavit is denied.

Plaintiff moves to strike Defendant's Memorandum in Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (ECF No. 38) and Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment (ECF No. 39). ECF No. 43.[4] The basis for the motion to strike is that Defendant filed these documents as separate responses to Plaintiff's combined Cross-motion and Opposition. Alternatively, Plaintiff asks that the Court "order Caplan to resubmit a single paper complying with L.R. 105.2.c and give Peters a full and fair opportunity to respond to that paper." ECF No. 43-1 at 5. Plaintiff argues that it is "unfair for Caplan, without regard to the plain language of the rule, to divide his argument up into different

---

[4] On March 26, 2015, the Court granted the parties' joint request to extend the discovery and status report deadline to June 1, 2015, and the dispositive motions deadline to July 17, 2015. ECF No. 35. On July 13, 2015, Defendant filed his Motion for Summary Judgment. ECF No. 36. Although the parties did not confer and agree to a briefing schedule, as required by Local Rules when both parties intend to file a motion for summary judgment, Plaintiff filed his Cross-Motion for Summary Judgment on July 30, 2015, seventeen days after Defendant's motion and thirteen days after the dispositive motion deadline. ECF No. 37. In Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment, Defendant argues that the cross-motion is untimely because Plaintiff filed the motion after the July 17, 2015 deadline. ECF No. 39-1 at 1. Because the parties failed to submit a proposed briefing schedule, the Court will apply the fourteen-day requirement for opposition memoranda pursuant to Local Rule 105.2.a. *See* Loc. R. 105.2.a (D. Md. 2014). Federal Rule of Civil Procedure 6(d) allows the filing party an additional three days to respond, Fed. R. Civ. P. 6(d), thus, Plaintiff's cross-motion is timely.

parts, where Peters has the right to respond to one part (the opposition), but not the other (the reply)." ECF No. 43-1 at 3–4. The Court finds no reason why the Plaintiff would have been unable to respond to both briefings, which cover the same subject matter and combined were less than fifteen pages, well below the twenty-five page limit stated in Local Rule 105. Loc. R. 105.3. The Court denies Plaintiff's motion to strike.[5]

## III.    MOTIONS FOR SUMMARY JUDGMENT

Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. *See* 42 U.S.C. § 1983 (2012); *Brown v. Bailey*, No. RDB-11-01901, 2012 U.S. Dist. LEXIS 81664, at *14 (D. Md. June 13, 2012) (quoting *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707, 119 S. Ct. 1624 (1999) ("A civil rights action under Section 1983 allows 'a party who has been deprived of a federal right under the color of state law to seek relief.'"). "To state a claim under Section 1983, a plaintiff must allege that: 1) a right secured by the Constitution or laws of the United States was violated and 2) the alleged violation was committed by a person acting under the color of state law." *Brown*, 2012 U.S. Dist. LEXIS 81664, at *15–16 (citing *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250 (1988)). "If a person is arrested when no reasonable officer could believe, in light of the contours of the offense at issue, that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues." *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001).

---

[5] While Plaintiff took the time to file and litigate the Motion to Strike, he did not file a Reply memorandum in support of his Cross-Motion for Summary Judgment or request an extension of time to file a Reply. Thus, the Court considers both motions fully briefed and ripe for decision.

### A.    Standard of Review

Summary judgment is properly granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007) (citing Fed. R. Civ. P. 56(c)). Courts view the record as a whole and in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S. Ct. 2548 (1986). While the movant bears the burden of demonstrating the absence of a genuine issue of material fact, it is the non-moving party's burden to establish the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S. Ct. 1348 (1986); *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)). "The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its 'affirmative obligation to prevent "factually unsupported claims or defenses" from proceeding to trial.'" *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 407 (D. Md. 2015) (quoting *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)). When considering a motion for summary judgment, the judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby, Inc.*, 477 U.S. at 249.

Cross-motions for summary judgment require that the Court consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). "The Court must deny

both motions if it finds there is a genuine issue of material fact, 'but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment.'" *Wallace v. Poulos*, No. DKC 2008-0251, 2009 U.S. Dist. LEXIS 89700, at *13 (D. Md. Sept. 29, 2009) (citation omitted).

### B. Caplan's Motion for Summary Judgment

Caplan's motion seeks summary judgment on the two remaining counts in the Amended Complaint: Count II alleging a violation of 42 U.S.C. § 1983 and Count III alleging a violation of Articles 24 and 26 of the Maryland Declaration of Rights.[6] Both involve the allegations that Caplan lacked probable cause to stop, search, or arrest Peters and that he lacked probable cause to prepare, sign, and submit the Statement of Probable Cause used to secure criminal charges against Peters. ECF No. 12 ¶ 35. Because the officers had reasonable suspicion to conduct an investigatory stop, the investigatory stop led to evidence establishing probable cause for arrest, and any errors or omissions in the statement of probable cause were not material, Caplan's motion for summary judgment will be granted.

#### 1. Investigatory Stop and Arrest

In order to determine the viability of Peters's claim that the officers violated his rights when they arrested him without probable cause, the Court must first determine whether the initial stop was an investigative stop requiring only reasonable articulable suspicion under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), or an arrest requiring probable cause. This is

---

[6] Article 24 of the Maryland Declaration of Rights is "the state's constitutional equivalent of the Fourteenth Amendment." *Randall v. Prince George's Cty.*, 302 F.3d 188, 193 (4th Cir. 2002). Article 26, on the other hand, is "Maryland's analogue to the Fourth Amendment." *Randall v. Peaco*, 175 Md. App. 320, 330 (2007). Claims brought under Article 24 are "analyzed in the same manner as if the claim were brought under Article 26." *Id.*; *see also Okwa v. Harper*, 360 Md. 161, 203–04 (2000). "In both instances, the claim is assessed under Fourth Amendment jurisprudence, rather than notions of substantive due process, precisely like the analysis employed for claims brought under 42 U.S.C. § 1983." *Id.*

particularly important in this case where the evidence available to the officers at the time of their

initial encounter with Peters was thin and falls short of probable cause. Peters contends that he

was "effectively under arrest as soon as he was stopped" because he was stopped at gunpoint,

forced to lie face-down on the ground, subjected to search, and made to wait. ECF No. 37-1 at

22. That is an incorrect statement of the law.

"[A]n arrest is defined using an objective standard: whether 'the suspect's freedom of

action is curtailed to a degree associated with formal arrest.'" *United States v. Elston*, 479 F.3d

314, 319 (4th Cir. 2007) (citing *Park v. Shiflett*, 250 F.3d 843, 850 (4th Cir. 2001)). "[T]he

perception . . . that one is not free to leave is insufficient to convert a *Terry* stop into an arrest. A

brief but complete restriction of liberty is valid under *Terry*." *United States v. Leshuk*, 65 F.3d

1105, 1109 (4th Cir. 1995) (ellipses in original) (internal citation omitted). The Fourth Circuit

has noted that a *Terry* stop must last "no longer than necessary to verify or dispel the officer's

suspicion." *Elston*, 479 F.3d at 320 (citing *Leshuk*, 65 F.3d at 1109). The Fourth Circuit has also

recognized that "drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for

questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a

custodial arrest." *Id.*; *see also United States v. Sinclair*, 983 F.2d 598, 603 (4th Cir. 1993)

(determining that use of drawn weapons did not convert investigative stop into arrest).

In this case, the undisputed evidence is that one or both officers approached Peters and

Etherege with guns drawn, required them to lie on the ground, and performed a search, which led

to the recovery of a knife. ECF No. 12 ¶ 8; ECF No. 36-3 at 5. The suspects were then briefly

detained until the victims could be transported to the scene to identify them, which they did. ECF

No. 36-3 at 5. Thus, the officers detained the suspects only as long as it took to "verify or dispel

the officer's suspicion" that they had attempted to rob the two victims. The fact that they drew

their weapons and immediately searched them was reasonable given that they had reason to believe that the suspects were armed with a knife. *See Elston*, 479 F.3d at 320 ("These officers reasonably suspected that [the suspect] was armed and dangerous, and thus did not exceed the limits of *Terry* by drawing their weapons and placing [the suspect] in handcuffs."). The Court therefore finds that the initial encounter was an investigative stop and not an arrest.

"A brief investigative stop is permissible whenever the police officer has a reasonable suspicion grounded in specific and articulable facts that the person he stopped has been or is about to be involved in a crime." *See United States v. Moore*, 817 F.2d 1105, 1107 (4th Cir. 1987) (citing *United States v. Hensley*, 469 U.S. 221, 227, 105 S. Ct. 675 (1985)). Here, Williams had been told by two alleged victims that two African-American males had just attempted to rob them at knife-point and fled toward Arundel Road, and Williams immediately drove in that direction and found two African-American males on Arundel Road. The clothing descriptions, while not exact, were similar in that the description included two jackets, one light and one dark, and the suspects were wearing two hooded sweatshirts, one light and one dark.[7] This evidence falls short of probable cause. But, recognizing that reasonable suspicion is a lower standard, the Court finds that the immediate identification of two African-American males, two blocks from the scene of the attempted robbery, in the location where the victims stated the two African-American suspects had just fled toward, coupled with the general similarity in, at least, the colors of the outer-garments they were wearing, gave the officers a suspicion that was reasonable and grounded in articulable facts. Thus, the officers were permitted to make an

---

[7] Having looked carefully at the three surveillance photos, ECF No. 37-4 at 2–4, the light garment appears very clearly to be a hooded sweatshirt. The dark garment worn by the second individual, however, is heavier and appears as though it could be a jacket or coat.

investigative stop. The next question, therefore, is whether the results of the investigative stop provided probable cause for arrest.

"Probable cause to arrest deals with probabilities and depends on the totality of the circumstances; the officer's reasonable ground for belief of guilt 'must be particularized with respect to the person to be searched or seized.'" *Davis v. Prince George's Cty.*, 348 F. App'x 842, 848 (4th Cir. 2009) (citing *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795 (2003)). For an arrest, probable cause "exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'" *Cloaninger v. McDevitt*, 555 F.3d 324, 334 (4th Cir. 2009) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223 (1964)). Probable cause may be missing "and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992).

Upon effecting an investigatory stop of Peters and Etherege based on a reasonable suspicion of an attempted robbery committed at knife-point, Caplan located a knife in Peters's pocket. The officers then brought the victims to the scene of the arrest and the victims identified each of the suspects and the knife used in the attempted robbery. At this point, the officers clearly had probable cause for the resulting arrest. Thus, the Court grants summary judgment in favor of Caplan regarding the initial stop and arrest.

### 2. Statement of Probable Cause

Caplan also seeks summary judgment regarding the claim that Caplan violated Peters's constitutional rights when drafting and submitting the Statement of Probable Cause. ECF No. 36-1. To establish a constitutional violation based on the Statement of Probable cause, Peters must

prove that Caplan "deliberately or with a reckless disregard for the truth made material false statements in his affidavit, or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Miller v. Prince George's Cty.*, 475 F.3d 621, 627 (4th Cir. 2007) (internal citations omitted). "Reckless disregard can be established by evidence that an officer acted with a high degree of awareness of [a statement's] probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (internal quotation marks omitted) (alteration in original). Reckless disregard can also be established by omissions where "a police officer failed to inform the judicial officer of facts [he] knew would negate probable cause." *Id.* (citing *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003) (internal quotation marks omitted) (alteration in original).

Most critical to the analysis in this case is the requirement that the false statement or omission be material. To make that determination, the Court must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Id.* at 628 (citing *Wilson*, 212 F.3d at 789). No civil liability attaches to the officer if the Court finds that the statement, as corrected, establishes probable cause. *Id.*

There are two statements in the Statement of Probable Cause that Plaintiff alleges are inaccurate: (1) that Corridean spoke to the 911 caller who had previously reported a robbery and (2) that Caplan and Williams stopped Peters and Etherege after a lookout was broadcast based on a description obtained by Corridean. It is clear that these statements are, in fact, false. As Peters correctly notes, the original 911 call was for a "Spanish" man robbing a "Muslim" woman and

not a report of two African-American males committing an attempted armed robbery, which was

the report provided by the two individuals on the scene. Thus, the officers were likely receiving

information about a different event and may have been receiving that information from different

individuals than the original 911 caller. At the very least, it was, therefore, inaccurate to state

definitively that Corridean spoke to the caller. Additionally, Peters and Etherege were stopped

prior to the broadcast made by Corridean, ECF No. 36-3 at 5, making the statement that they

were stopped based on Corridean's lookout false as well.

Peters also identifies a number of statements he believes to be material omissions. ECF

No. 37-1 at 26. The Court will assume, without deciding, that those statements should have been

included in the Statement of Probable Cause. Redacting the two false statements and including

the omitted statements and additional relevant information would leave the following facts in a

"corrected" statement of probable cause:

- On January 7th, 2012, at approximately 2147 hours, officers responded to the 4300-blk of 28th place, Mount Ranier Prince Georges County Maryland for a report of an armed robbery in progress. ECF No. 36-3 at 4.

- The 911 call that prompted the dispatch described an apparent attack by a short "Spanish" male on a "Muslim" woman with a scarf, using a gun. ECF No. 36-5 at 16–17; ECF No. 36-4; ECF 37-1 at 26.

- Sergeant Williams encountered a Hispanic couple. ECF No. 36-5 at 25–26. The couple said two African-American males attempted to rob them at knife-point. ECF No. 36-3 at 4. One of the victims stated that the men were wearing jackets, one light and one dark, and fled toward Arundel Road. *Id.*

- Neither the 911 call or any radio dispatch had previously mentioned a knife being used in the attack. ECF No. 37-1 at 26.

- Two African-American males, Peters and Etherege, were stopped at 2401 Arundel Road. ECF 36-3 at 5. They were wearing heavy sweatshirts with hoods, one light and one dark. ECF No. 37-4 at 2–4.

- After the males had been stopped, we received a radio dispatch with an additional description from the victims: "Two number one males, large jackets;

approximately five ten to six feet stand by for age. Thin build." ECF No. 37-8 at 11.

- One of the suspects appears thin and one is husky.[8]

- A knife was recovered from Peters. ECF No. 36-3 at 5. Peters also had approximately $150 in his pocket, as well as a pay stub indicating employment. ECF No. 37-4 at 1.

- The victims were transported to the scene of the arrest and identified Peters and Etherege as the individuals who attempted to rob them and the knife as the weapon used. ECF No. 36-3 at 5.

Viewing the above as the "corrected" Statement of Probable Cause, the Court has little difficulty finding that if this were submitted to the Commissioner, there would have still been a finding of probable cause. To be sure, one is left to wonder about the connection between the original 911 call and the events described by the alleged victims on the scene.[9] But the focus on the 911 call is, ultimately, little more than a distraction. The question before the Court is not whether the statement, as corrected, provides probable cause that the officers solved the crime reported by the original 911 caller. The question is whether it establishes probable cause that they committed the crime they were charged with. It does. Presented with this "corrected" statement, a Commissioner would have been informed that (1) two individuals claimed that two African-American males attempted to rob them at knife-point and fled towards Arundel Road; (2) two African-American males were stopped on Arundel Road and one had a knife in his

---

[8] The Statement of Probable Cause for Peters lists him as six feet tall and 228 pounds. ECF No. 36-10. The Arrest Record for Etherege states that he is five feet seven inches tall and 155 pounds. ECF No. 36-8.

[9] There are a variety of possible explanations for this confusion. Among other possibilities, it is possible that: (1) this couple was not the couple that was the subject of the 911 call; (2) the male did assault the female prior to the attempted robbery; or, (3) the couple made up the story about the attempted robbery to deflect from an incident occurring between them. There are various flaws in each of these theories and all are completely speculative. Ultimately, however, it is not relevant to determining whether the officers acted reasonably given the information available to them.

possession; and, (3) the two alleged victims identified both suspects as the persons who attempted to rob them and further identified the knife as the one that was used.

Certainly questions remained at that point but probable cause does not "require officials to possess an airtight case before taking action. The pieces of an investigative puzzle will often fail to neatly fit, and officers must be given leeway to draw reasonable conclusions from confusing and contradictory information, free of apprehension that every mistaken search or seizure will present a triable issue of probable cause." *Taylor v. Farmer*, 13 F.3d 117, 121–22 (4th Cir. 1993). There are, of course, cases where officers draw unreasonable conclusions from the information provided to them. *See, e.g.*, *id.* (denying summary judgment to officer-defendants where officers threatened to arrest a five-foot tall, 100 pound, "frail woman in her forties" based on a description of five-foot seven, 150 pound woman in her twenties). But even when the evidence is viewed in the light most favorable to the Plaintiff, this is not such a case.

Although the officers here were dealing with confusing and contradictory information, their actions were reasonable. There was reasonable suspicion for the investigative stop, probable cause for the arrest, and the omissions and errors in the statement of probable cause were not material to the determination of probable cause.[10] Therefore, Defendant's Motion for Summary Judgment is granted.[11]

---

[10] Because the Court finds that Plaintiff's rights were not violated, Caplan is not in need of qualified immunity. Nonetheless, that finding, by necessity, means that qualified immunity would apply here. *See Miller*, 475 F.3d at 626–27 (explaining that in order for a plaintiff to defeat defendant's claim of qualified immunity, plaintiff must establish that the officer's conduct violated a constitutional right *and* the right asserted was clearly established at the time).

[11] Plaintiff's Cross-Motion for Summary Judgment seeks summary judgment in his favor based on the same facts and allegations at issue in Defendant's Motion. Having found that summary judgment in Defendant's favor is appropriate when viewing the evidence in the light most favorable to Plaintiff, the Court must, of course, deny Plaintiff's Cross-Motion.

### III.   CONCLUSION

For the reasons discussed, Defendant Caplan's Motion for Summary Judgment (ECF No. 36) is GRANTED; Plaintiff Peters's Cross-Motion for Summary Judgment (ECF No. 37) is DENIED; Defendant's Motion to Strike Plaintiff's Supplemental Affidavit (ECF No. 40) is DENIED; and, Plaintiff's Motion to Strike Defendant's Reply to Response to Motion and Defendant's Response in Opposition to Motion for Summary Judgment (ECF No. 43) is DENIED. A separate Order shall follow.

Dated: March 24 , 2016

GEORGE J. HAZEL
United States District Judge